UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TERI JEAN LACHAPELLE-BANKS,

              Plaintiff,

  v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

              Defendant.

Case No. 2:16-cv-01956-RBL

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

THIS MATTER is before the Court on Plaintiff LaChapelle-Banks' Complaint [Dkt. 3] for review of the Social Security Commissioner's denial of her application for disability insurance benefits.

LaChapelle-Banks suffers from lumbar sprain/strain, status post laminectomy, and colitis or Crohn's disease. *See* Dkt. 7, Administrative Record 11. She applied for disability insurance benefits in September 2013, alleging she became disabled beginning in July 2013. *See* AR 9. That application was denied upon initial administrative review and on reconsideration. *See id*. A hearing was held before Administrative Law Judge Timothy Mangrum in January 2015. *See id*. LaChapelle-Banks, represented by counsel, appeared and testified, as did a vocational expert. *See* AR 28-69.

The ALJ determined LaChapelle-Banks not to be disabled. *See* AR 6-27. The Appeals Council denied LaChapelle-Banks' request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. *See* AR 1-4; 20 C.F.R. § 404.981. In January

ORDER - 1

2017, LaChapelle-Banks filed a complaint seeking judicial review of the Commissioner's decision. *See* Dkt. 3.

LaChapelle-Banks argues the Commissioner's decision to deny benefits should be reversed and remanded for an immediate award of benefits, or for further administrative proceedings, because the ALJ erred in evaluating the medical evidence in the record and in finding at step five of the sequential evaluation process that LaChapelle-Banks could perform work available in the national economy.

The Commissioner argues the ALJ did not err in evaluating the medical evidence, so the ALJ's finding that LaChapelle-Banks was not disabled was supported by substantial evidence and should be affirmed.

## I. DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld by the Court if the Commissioner applied the "proper legal standards" and if "substantial evidence in the record as a whole supports" that determination. *See Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test

ORDER - 2

requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

**A.      The Medical Evidence in the Record.**

The ALJ determines credibility and resolves ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the courts to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 3

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See id.* at 830.

LaChapelle-Banks argues the ALJ erred by failing to give a specific and legitimate reason supported by substantial evidence to discount the opinion of treating physician Friedrich Loura, M.D. *See* Dkt. 9 at 5-11. The Court agrees.

Loura began treating LaChapelle-Banks for abdominal pain in November 2012 and diagnosed her with Crohn's disease of the small bowel with possible enterovesical fistula healing in March 2013. *See* AR 693, 698-99. Loura identified LaChapelle-Banks' symptoms as nausea, abdominal pain and cramping, malaise, fatigue, frequent vomiting, abdominal distention, and fistulas resulting in feces in urine. *See* AR 693. In January 2015, Loura completed a residual functional capacity questionnaire. *See* AR 693-95. In the questionnaire, Loura opined that, because of LaChapelle-Banks' impairments, she would be capable of only low-stress jobs, would need to shift positions from sitting to standing at will, and would need ready access to a restroom, and would sometimes need unscheduled restroom breaks. *See* AR 694. Loura stated

ORDER - 4

LaChapelle-Banks' symptoms would frequently interfere with the attention and concentration needed to perform even simple work tasks. *See id*. Loura stated that the episodic aspects of LaChapelle-Banks' impairments were random in nature, severity, duration, and frequency. *See* AR 693. Ultimately, Loura opined LaChapelle-Banks would be likely to be absent from work because of her impairments or treatment about four days a month. *See* AR 695. The ALJ gave Loura's opinion little weight for several reasons, none of which is specific, legitimate, and supported by substantial evidence. *See* AR 18-19.

First, the ALJ found Loura's opinion was vague, noting Loura did not specify how frequently or for how long LaChapelle-Banks would need to take unscheduled restroom breaks. *See* AR 18. Loura stated LaChapelle-Banks would "sometimes" need to take unscheduled restroom breaks, but he declined to state how often or for how long, presumably due to the "random" nature of her symptoms. *See* AR 693-94. Loura's inability to predict with any certainty the frequency or duration of the breaks is not alone a legitimate reason for the ALJ to discount the necessity of the breaks entirely and to assess LaChapelle-Banks with an RFC containing no allowances for unscheduled restroom breaks. *See* AR 13; *see also Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (stating that the ALJ must explain why "significant probative evidence has been rejected"). Furthermore, the rest of the limitations to which Loura opined, including needing to shift positions and being absent about four days a month, were not vague. *See* AR 693-95.

Next, the ALJ stated Loura's opinion was "inconsistent with the totality of the evidence." *See* AR 18. This reason is not sufficiently specific, particulary because the ALJ cited no examples. *See id*. It is insufficient for an ALJ to reject the opinion of a treating physician by merely stating, without more, that there is a lack of objective medical evidence in the record to

ORDER - 5

support that opinion. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

The ALJ also discounted Loura's opinion because LaChapelle-Banks' Crohn's disease symptoms allegedly improved with medication and without need for surgery. *See* AR 18. However, the records cited by the ALJ to support this alleged improvement are from LaChapelle-Banks' hospitalizations in 2014 due to Crohn's flare-ups. *See* AR 18, 657, 659-79. The records indicate LaChapelle-Banks came to the emergency room complaining of nausea, vomiting, and abdominal pain, which a physician attributed to her Crohn's disease and fistula. *See* AR 659. While that physician noted LaChapelle-Banks' symptoms "improved with antiemetics," the physician still admitted her to the hospital because she continued to experience nausea and would benefit from a nasogastric tube. *See id*. LaChapelle-Banks was later discharged but returned to the hospital two weeks later with recurring symptoms. *See* AR 660. A physician noted surgical repair of the fistula might be necessary. *See* AR 669. LaChapelle-Banks was restarted on steroids, which improved her symptoms until she returned to the hospital two weeks later, in the middle of her steroid regimen, complaining of recurring symptoms. *See* AR 675. These records, rather than showing any improvement that would discredit Loura's opinion, in fact support Loura's opinion that LaChapelle-Banks' impairments and treatment would cause significant absenteeism.

//

ORDER - 6

Next, the ALJ noted Loura believed LaChapelle-Banks had a good prognosis. *See* AR 18. However, whatever Loura meant by a "good" prognosis, which was unquantified, does not change his specific opinion regarding the functional limitations resulting from LaChapelle-Banks' impairments, which Loura found had lasted or were expected to last at least 12 months. *See* AR 693-94.

Finally, the ALJ noted LaChapelle-Banks testified she was "able to assist her neighbor with activities of daily living at least several days a week." *See* AR 18-19. An ALJ may reject a physician's opinion in part because other evidence of the claimant's ability to function contradicts that opinion. *See Morgan*, 169 F.3d at 601-02. However, LaChapelle-Banks' testimony, viewed in full context, does not contradict Loura's opinion. LaChapelle-Banks testified that she cared for her neighbor about 13 hours a week. *See* AR 33. She noted she did not have to do any heavy physical transfers. *See* AR 37. She testified that her husband accompanied her 90% of the time and that he would carry the laundry basket and the groceries because she was unable. *See* AR 37-38. LaChapelle-Banks testified that her schedule was very flexible and that if she was having a "particularly rough day," she did not have to go. *See* AR 38. This testimony does not contradict Loura's opinion regarding LaChapelle-Banks' functional limitations and absenteeism. Therefore, the ALJ erred by failing to provide a specific and legitimate reason supported by substantial evidence for discounting Loura's opinion.

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination on whether an error is harmless requires a "case-specific application of

ORDER - 7

judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)). Had the ALJ fully credited Loura's opinion, the RFC would have included additional limitations, as would the hypothetical questions posed to the vocational expert. For example, Loura stated LaChapelle-Banks would miss about four days of work a month, but the vocational expert testified that employers would only tolerate half a day of absenteeism a month. *See* AR 66, 695. Therefore, the ALJ's error affected the ultimate disability determination and is not harmless.

**B.      Scope of Remand.**

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). When the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). It is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

//

ORDER - 8

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Here, while the ALJ erred in evaluating Loura's opinion, issues remain regarding conflicts in the medical opinions over LaChapelle-Banks' functional capabilities. Remand for further consideration is warranted.

## CONCLUSION

The Court finds the ALJ improperly concluded LaChapelle-Banks was not disabled. The Commissioner's decision to deny benefits is REVERSED, and this matter is REMANDED for further administrative proceedings as detailed in this order.

DATED this 7th day of August, 2017.

Ronald B. Leighton
United States District Judge